In the Matter of the Application of FRANK T. AHERN, Appellant, for a Peremptory Writ of Mandamus against WILLIAM ELDER et al., as Inspectors of Election in the Fourth Election District of the Twenty-fifth Assembly District of the County of New York, Respondents.

Elections — registration of voters — constitutionality of statute requiring voters in cities of the first class to sign their names on registry list.

The Constitution of this state not only contains no prohibition against the enactment of laws for regulating the right of suffrage, but positively enjoins the passage of such laws, and so long as they do not add to the qualifications required of electors by the Constitution, the legislative will is supreme.

Registration laws should be so adapted to local conditions as to effectuate the purpose of the Constitution to permit the elective franchise to such citizens only as may by proper proof be shown to possess the constitutional qualifications.

The provisions of the statute (L. 1908, ch. 521) are not unreasonable in so far as they require the electors in cities of one million or more inhabitants to sign the public copy of the register when they can write and to truthfully answer the statutory questions propounded to them when they cannot write, and do not contravene the provisions of sections 1 and 4 of article 2 of the State Constitution.

Such a requirement does not violate the constitutional provision (N. Y. Const. art. 3, § 18) prohibiting the passage of a private or local law relating to the opening and conducting of elections.

*Matter of Ahern* v. *Elder*, 130 App. Div. 900, affirmed.

(Argued May 31, 1909; decided June 18, 1909.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 11, 1909, which affirmed an order of Special Term denying a motion for a peremptory writ of mandamus to compel the respondents, as inspectors of election, to add the relator's name to the register of electors.

The facts, so far as material, are stated in the opinion.

*Daniel F. Cohalan* and *Robert L. Luce* for appellant. Article 2 of chapter 909 of the Laws of New York of 1896, and

the various acts amendatory thereof and supplemental thereto, is unconstitutional and void because contrary to the provisions of sections 1 and 4 of article 2 of the Constitution of New York. (*Green* v. *Shumway*, 39 N. Y. 418; *State* v. *Conner*, 22 Neb. 265; *Dells* v. *Kennedy*, 49 Wis. 555; *State* v. *Baker*, 38 Wis. 71; *Daggett* v. *Hudson*, 43 Ohio St. 548; *Page* v. *Allen*, 58 Penn. St. 338; *Edwards* v. *Barbury*, 28 Iowa, 267; *White* v. *Multnomah Co.*, 13 Ore. 317; *Atty.-Gen.* v. *City of Detroit*, 78 Mich. 548.) The provisions of chapter 521, Laws of 1908, so far as they apply specially to cities of one million inhabitants or more, are void because contrary to the provisions of section 18 of article 3 of the Constitution of New York. (*Matter of Henneberger*, 155 N. Y. 420; *People* v. *Dunn*, 157 N. Y. 528; *Kittinger* v. *B. T. Co.*, 160 N. Y. 395.)

*Francis K. Pendleton, Corporation Counsel* (*Theodore Connoly* and *Terence Farley* of counsel), for respondents. Chapter 521 of the Laws of 1908 does not violate the provisions of either section 1 of article 2 or section 4 of article 2 of the State Constitution. (*State ex rel. Atty.-Gen.* v. *Dillon*, 32 Fla. 545; *Capen* v. *Foster*, 12 Pick. 490; *Cusick's Election*, 136 Penn. St. 459; *De Walt* v. *Bartley*, 146 Penn. St. 529; *State ex rel. Cothren* v. *Lean*, 9 Wis. 279.) Section 18 of article 3 of the State Constitution does not apply to registry laws which are passed pursuant to section 4 of article 2 of the same instrument. But even assuming that it does, chapter 521 of the Laws of 1908 is not a private or local bill within the meaning of section 18 of article 3 of the State Constitution. (*People ex rel. Grinnell* v. *Hoffman*, 116 Ill. 587; *Comm.* v. *McClellan*, 83 Ky. 686; *City of Owensboro* v. *Hickman*, 90 Ky. 629; *Lankford* v. *Somerset Co.*, 73 Md. 105; *State ex rel. Eble* v. *Leavitt*, 33 Neb. 285; *Patterson* v. *Barlow*, 60 Penn. St. 54.)

Werner, J. The respondents are the inspectors of election in the fourth election district of the twenty-fifth assem-

bly district, in the county of New York, and the relator is an elector in that district. On the 10th day of October, 1908, which was one of the regular registration days fixed by statute, these inspectors of election convened as a board of registry at No. 99 Greenwich avenue, in the election district referred to, and the relator presented himself for registration. Upon the relator's request his name was placed upon the register, and he was asked certain questions touching his qualifications which he truthfully answered and which were correctly entered upon the register by the several members of the board. When the relator was asked to sign the public copy of the register he declined to do so, and the board thereupon refused to register him. The relator then applied to the Supreme Court at Special Term for a peremptory writ of mandamus to compel the board to register him without his signature. The writ was refused and upon appeal from the order entered upon that decision there was a unanimous affirmance at the Appellate Division. The relator has now appealed to this court, and he asserts his right to a writ upon the ground that the statute, under which he was asked to sign the public copy of the election register, contravenes the provisions of the Constitution which prescribe the qualifications of electors.

That portion of our State Constitution which defines the qualifications of voters is contained in article two. So much of the first section thereof as is germane to the question before us provides that " Every male citizen of the age of twenty-one years, who shall have been a citizen for ninety days, and an inhabitant of this State one year next preceding an election, and for the last four months a resident of the county and for the last thirty days a resident of the election district in which he may offer his vote, shall be entitled to vote at such election in the election district of which he shall at the time be a resident, * * * for all officers that now are or hereafter may be elected by the people; and upon all questions which may be submitted to the vote of the people * * *. "

The fourth section of the same article provides that " Laws

shall be made for ascertaining, by proper proofs, the citizens who shall be entitled to the right of suffrage hereby established, and for the registration of voters; which registration shall be completed at least ten days before each election. Such registration shall not be required for town or village elections except by express provision of law. In cities or villages having five thousand inhabitants or more, according to the last preceding state enumeration of inhabitants, voters shall be registered upon personal application only ; but voters not residing in such cities shall not be required to apply in person for registration at the first meeting of the officers having charge of the registry of voters."

Pursuant to the last quoted section of the Constitution the legislature enacted the Election Law (Ch. 909, L. 1896) which has since been amended in various particulars. Among the amendments there are several contained in chapter 521, Laws of 1908, which relate exclusively to cities of a million or more inhabitants, and under one of the amendments in this class it is provided that the registers of the inspectors shall contain various columns, the twentieth one of which "shall be reserved for the signature of the elector at the time of registration or in case the elector alleges his inability to write, for entering therein the number of the 'identification statement for registration day' made by such elector as hereinafter provided. Above each horizontal line in the said twentieth column shall be printed the words 'The foregoing statements are true,' and the elector shall at the time of registration sign his name by his own hand and without assistance using an indelible pencil or ink below such words on the horizontal line in the register of electors designated as the public copy." In a case where the elector cannot write, the inspector is required to ask him certain enumerated questions as to his name, parentage, occupation, present employment, whether married or single, place of residence, giving the details necessary for explicit identification, and when these questions have been answered by the elector and written down by the inspector, the latter is required to sign a certificate in the following form : " I certify that I

have read to the above-named elector each of the foregoing questions and that I have truly recorded his answers as above to each of said questions."

By section 3 of the same statute (Ch. 521, L. 1908) the Election Law (Sec. 103) is further amended so as to require each poll clerk in election districts in cities of a million or more inhabitants to keep a poll book, which each elector is required to sign before he receives a ballot. This signature is to be compared with the elector's signature in the inspector's register, and if they correspond, the elector is given a ballot. If the elector cannot write, he is required to answer the same questions which were propounded to him when he registered, and for the purpose of identifying him these answers are compared, and if they correspond, the elector is given a ballot.

The constitutionality of these election statutes is attacked upon two grounds: 1. Because they contravene the provisions of sections one and four of article 2 of our State Constitution. 2. Because the provisions of chapter 521, Laws of 1908, so far as they apply specially to cities of a million or more of inhabitants, are contrary to the provisions of section eighteen of article three of our State Constitution.

The provisions of section one of article two of the Constitution, above quoted, define in general terms the qualifications of voters, and the provisions of section four of the same article impose upon the legislature the duty of enacting laws for ascertaining by proper proofs the citizens who shall be entitled to the right of suffrage. Neither in the general Election Law, nor in the specific amendments of 1908, is there anything which violates these constitutional provisions. The command of the Constitution is that the legislature shall enact such laws as may seem best calculated to ascertain whether persons who present themselves for the exercise of the right of suffrage, possess the prescribed qualifications. If the law of 1908, or any part of the Election Law, had prescribed qualifications not to be found in the Constitution, the case would fall within the rule adopted by the court in *Green* v. *Shumway* (39 N. Y. 418), where it was held that chapter 194

32

of the Laws of 1867, relating to the qualification of voters to elect delegates to a constitutional convention, was invalid because it prescribed a form of oath to be taken by the elector which added a qualification forbidden by the Constitution. This appeal presents an entirely different question. There is nothing in the Constitution to forbid the enactment of such a statute as the one under consideration. On the contrary, the general scope of the statute is such as to bring it within the express command of the Constitution and the only question presented for our consideration is whether the particular statutory regulation complained of is reasonable. If it is reasonable it is clearly constitutional.

In order to determine whether it is reasonable or not we must consider practical conditions. It is matter of common knowledge that the great centers of population offer peculiar opportunities for fraud and corruption in the conduct of elections, which can be prevented or minimized only by special regulations adapted to the conditions out of which these evils arise. Thus it is that primaries and elections in cities have to be hedged about by statutory provisions that are not deemed necessary in villages and towns. The same reasons which underlie the distinction drawn between cities and rural communities apply to the classification of cities, for the difficulty of preserving the purity of the electorate increases in geometrical ratio with the density and size of population. It is competent, therefore, for the legislature to prescribe such reasonable regulations as are designed to secure accurate information concerning the qualifications of voters, and that necessarily includes some method of identification. We think that the provisions of the statute (Ch. 521, L. 1908) are not unreasonable in so far as they require the electors in cities of a million or more inhabitants to sign the public copy of the register when they can write and to truthfully answer the statutory questions propounded to them when they cannot write.

That portion of the statute (Ch. 521, L. 1908) above discussed, is further assailed on the ground that it contravenes

section eighteen of article three of the Constitution which provides that "The legislature shall not pass a private or local bill in any of the following cases: * * * The opening and conducting of elections or designating places of voting. * * * The legislature shall pass general laws providing for the cases enumerated in this section."

We think that chapter 521, Laws of 1908, is not a private or local law within the meaning of the Constitution. It purports to be, and is in fact, an amendment to chapter 909 of the Laws of 1896, which is chapter six of the General Laws of that year. It deals with the subjects of registration and voting for the state at large, and while it contains provisions which peculiarly affect the city of New York, it falls within the principle enunciated by this court in *People* v. *Dunn* (157 N. Y. 528), where it was held that a law providing for a special jury in certain criminal cases in the city of New York was a mere regulation of the mode of securing a common-law jury, and, therefore, not in violation of section eighteen of article three of the Constitution which prohibits the enactment of any private or local bill for "selecting, drawing, summoning or impaneling grand or petit jurors." The amendment to the Election Law (Ch. 521, L. 1908) is not a limitation upon the right of the elective franchise, but a regulation designed to secure its free and untrammeled exercise. Being a regulation the enactment of which is expressly enjoined upon the legislature by the Constitution, it must of necessity be adapted to the end sought to be attained. Such a regulation as would be proper and sufficient in the villages and towns of the state would prove inadequate and futile in the larger cities and the same argument applies to a classification of the various cities upon the basis of population. It may be admitted that some of the provisions of the statute under consideration, which apply only to cities of a million or more inhabitants, affect no other voters than those in the city of New York. If those provisions are deemed necessary in the light of local conditions, and apply alike to all the voters of the locality, the general law in which they are

embodied is not a private or local bill within the meaning of the Constitution. The provision of the Constitution (Art. 3, sec. 18) which forbids the enactment of private or local bills for " the opening and conducting of elections," is to be read in connection with the other provision (Art. 2, sec. 4), which requires the legislature to make laws "for ascertaining by proper proofs, the citizens who shall be entitled to the right of suffrage." Unless the legislature has the power to make such laws as shall be effective against local conditions which are productive of confusion, fraud and disorder, the people are in danger of losing the very rights which the Constitution is designed to secure. If a registration law, to be constitutional, must be absolutely uniform in its application to every part of the state, it needs no argument to prove that it will be utterly ineffective in the large cities, if framed according to the needs of rural communities, and grossly oppressive in many parts of the state, if modeled upon the requirements of densely populated centers. It is, in short, one of the inherent necessities of the case that registration laws shall be so adapted to local conditions as to effectuate the purpose of the Constitution to permit the elective franchise to such citizens only as may by proper proof be shown to possess the constitutional qualifications. These qualifications are specified by the Constitution. By the same instrument the duty of ascertaining them is imposed upon the legislature. The method by which that shall be done must, of course, be left to the discretion of the law-making power. Subject to the restrictions and limitations of the Constitution the power of the legislature to make laws is absolute and uncontrollable. The Constitution not only contains no prohibition against the enactment of laws for regulating the right of suffrage, but positively enjoins the passage of such laws, and so long as they do not add to the qualifications required of electors by the Constitution, the legislative will is supreme.

The precise question presented by this appeal does not seem to have been adjudicated in this state, but the views

which we entertain find ample support in the well-considered decisions of the highest courts of several of our sister states. (*Commonwealth* v. *McClelland*, 83 Ky. 687; *City of Owensboro* v. *Hickman*, 90 Ky. 629; *Capen* v. *Foster*, 12 Pick. 485; *Byler* v. *Asher*, 47 Ill. 102; *Edmonds* v. *Banbury*, 28 Iowa, 267; *Auld* v. *Walton*, 12 La. Ann. 129; *State ex rel.*, *Wood* v. *Baker*, 38 Wis. 71; *Patterson* v. *Barlow*, 60 Pa. St. 55.)

A short quotation from the last of the cases above cited presents very succinctly the reasoning which underlies them all. (p. 76.) "*Of necessity, laws passed to promote a given object, must be controlled or modified by the circumstances surrounding the object, and must be framed to meet the exigencies standing in the way of the end to be reached. If uniformity of regulation be unsuited to different localities, the end must be attained by diversity. If in one part of the state a system secures to electors a free and equal election, but fails to secure it in another part because of the difference of circumstances, what principle of constitutional law makes it unlawful to enact other provisions to counteract the circumstances, and secure the true purpose of the Constitution? Good sense, good order and sound morality require this diversity of regulation when it secures the end; and it is a great fallacy to substitute uniformity of regulation for a free and equal election.*"

Our attention is called to a number of other features of the Election Law and its amendments, as to which we express no opinion because the questions raised concerning them are not before us on this appeal. For that reason we refrain from discussing the conflicting opinions of courts in other jurisdictions as to the constitutionality of statutes limiting the right of registration to certain specified days.

The order appealed from should be affirmed, with costs.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, VANN and HISCOCK, JJ., concur.

Order affirmed.