OPINION OF THE COURT
Harold J. Hughes, J.
Plaintiff moves for a preliminary injunction restraining the defendants from implementing the Governor’s Executive Order No. 43 entitled “Establishing A State Program For Voter Registration”.
On July 9, 1984 Governor Cuomo issued Executive Order No. 43 which establishes a State program for voter registration within the executive branch. Part I of the order directs State agencies which have regular contact with the public, including the Departments of Labor, Motor Vehicles, Social Services, and State, as well as the Workers’ Compensation Board, to conduct voter registration projects to assist citizens in registering to vote. The *886 involved State agencies are directed to make mail registration forms available and to provide staff to assist the public in filling out the forms. In subdivision II of the order, a Voter Registration Task Force is established consisting of the Director of State Operations, the Commissioners of the Departments of Labor, Motor Vehicles, Social Services, and State, the Chairman of the Workers’ Compensation Board, the Directors of the Office of Employee Relations and the Division of the Budget, and the Executive Director of the State Board of Elections. The Task Force is directed to meet quarterly and to develop training programs for State employees involved in the registration effort and to report to the Governor by December 31 upon the progress of the program which “report shall include information on the number of new voters registered and the operation of the program in agency offices”.
Plaintiff is the chairman of the New York Republican State Committee and has brought an action to permanently enjoin implementation of the executive order upon the ground that it is unconstitutional and illegal. To preserve the status quo until the action can be determined, plaintiff requests a preliminary injunction restraining the Governor from implementing the executive order. To be entitled to a preliminary injunction, “plaintiff must demonstrate the likelihood of ultimate success on the merits, irreparable injury to itself if the relief is not granted, and a balancing of the equities” (Picotte Realty v Gallery of Homes, 66 AD2d 978). The first issue is whether plaintiff is likely to prevail in this litigation.
Plaintiff advances several arguments attacking the validity of the executive order. Plaintiff asserts that the Constitution of the State of New York and implementing statutes mandate that voter registration be conducted in a bipartisan manner and this order violates that mandate in that the proposed voter registration program will be controlled by the Democratic Party through the means of the Governor and the hand-picked political appointees he has placed on the Voter Registration Task Force. The second argument is that the Governor does not have the authority to issue the executive order and in so doing is usurping the power of the Legislature and contravening the voter regis *887 tration plan enacted by that body. The latter argument is persuasive.
Voting is addressed in article II of the Constitution of the State of New York. Section 1 of that article sets forth the qualifications necessary to be entitled to vote. Section 2 concerns absentee voting and directs that, “The legislature may, by general law, provide a manner” to permit absentee voting. Section 3 relates to the exclusion of certain persons from the right to vote and directs, “The legislature shall enact laws excluding from the right of suffrage all persons convicted of bribery or of any infamous crime.” Section 4 protects the residency, for voting purposes, of persons such as members of the military or prison inmates. Section 5 covers registration of voters and provides: “Laws shall be made for ascertaining, by proper proofs, the citizens who shall be entitled to the right of suffrage hereby established, and for the registration of voters”.
Section 6 of article II provides: “The legislature may provide by law for a system or systems of registration whereby upon personal application a voter may be registered and his registration continued so long as he shall remain qualified to vote from the same address, or for such shorter period as the legislature may prescribe”.
Section 7 pertains to the manner of voting and directs the Legislature to provide for the proper identification of voters. Section 8 of article II, which is the section relied upon by plaintiff in support of his first argument against the executive order, provides: “All laws creating, regulating or affecting boards or officers charged with the duty of registering voters, or of distributing ballots to voters, or of receiving, recording or counting votes at elections, shall secure equal representation of the two political parties which, at the general election next preceding that for which such boards or officers are to serve, cast the highest and the next highest number of votes. All such boards and officers shall be appointed or elected in such manner, and upon the nomination of such representatives of said parties respectively, as the legislature may direct. Existing laws on this subject shall continue until the legislature shall otherwise provide. This section shall not apply to town, or village elections.”
*888 Section 9, the final section of article II, allows the Legislature, by general law, to permit citizens to vote for President and Vice-President of the United States even if they do not otherwise meet the residency requirements of New York State.
The foregoing review establishes that the framers of the Constitution of the State of New York set forth the qualifications necessary to vote and invested the Legislature with control of the means and methods of conducting voter registration and elections. The preeminence of the legislative branch in this area is firmly established. In O’Brien v City of Saratoga Springs (224 App Div 124, 125) the Third Department stated: “The Legislature, acting for the sovereign, provides the election machinery for exercising the privilege of voting. Registration of voters is required by the State and is a part of the election procedure.”
The Court of Appeals has long recognized that the Legislature has exclusive jurisdiction in the area of voter registration and can tailor its plan to meet local needs. In Matter of Ahern v Elder (195 NY 493, 500) the Court of Appeals stated: “If a registration law, to be constitutional, must be absolutely uniform in its application to every part of the state, it needs no argument to prove that it will be utterly ineffective in the large cities, if framed according to the needs of rural communities, and grossly oppressive in many parts of the state, if modeled upon the requirements of densely populated centers. It is, in short, one of the inherent necessities of the case that registration laws shall be so adapted to local conditions as to effectuate the purpose of the Constitution to permit the elective franchise to such citizens only as may by proper proof be shown to possess the constitutional qualifications. These qualifications are specified by the Constitution. By the same instrument the duty of ascertaining them is imposed upon the legislature. The method by which that shall be done must, of course, be left to the discretion of the law-making power. Subject to the restrictions and limitations of the Constitution the power of the legislature to make laws is absolute and uncontrollable. The Constitution not only contains no prohibition against the enactment of laws for regulating the right of suffrage, but positively enjoins the passage of *889 such laws, and so long as they do not add to the qualifications required of electors by the Constitution, the legislative will is supreme.”
The Legislature of the State of New York has taken to heart its duties concerning voter registration and participation in elections and has enacted a comprehensive legislative plan addressed thereto. The Legislature has created a bipartisan New York Board of Elections comprised of four commissioners (see Election Law, § 3-100). One of the duties of the State Board of Elections is to “take all appropriate steps to encourage the broadest possible voter participation in elections” (Election Law, § 3-102, subd 13). To encourage greater voter participation by making registration simpler, the Legislature, by chapter 233 of the Laws of 1976, enacted section 5-210 of the Election Law which permits registration by mail. The application forms are designed by the State Board of Elections and processed by the local county boards of elections.
The Legislature, no doubt aware of the differing local conditions described in Matter of Ahern v Elder (195 NY 493, supra), has directed that the local county boards of elections are the government bodies charged with distributing the registration applications (Election Law, § 5-210, subd 2). During the 1983-1984 session, Assemblyman Norman introduced Assembly Bill No. 3770-A which proposed to amend the Election Law by directing each county board of elections to make registration applications available through distribution in Federal, State and local governmental buildings, including the local offices of the Departments of Motor Vehicles, Unemployment Insurance, and the offices of each local Department of Social Services. The Assembly passed the bill but the Senate did not. Through consideration of this bill, the Legislature had before it almost the identical plan as proposed by the Governor in Executive Order No. 43. The Legislature did not choose to enact that plan. The Governor, acting on his own, did. The question is whether he has the authority to do so.
The Constitutions of both the United States and this State are to a large extent documents designed to limit the power of government. To that end, three separate but equal branches have been created, each with its own function, *890 and with a system of checks and balances designed to prevent one branch from becoming preeminent. The Legislature makes the laws; the Governor enforces those laws; and the courts interpret the laws and resolve disputes arising thereunder. No holder of the office of Governor has the power, be his intentions the best or worst, to make the laws of this State.* The general powers and duties of the Governor are set forth in section 3 of article IV of the State Constitution as follows: “The governor shall be commander-in-chief of the military and naval forces of the state. He shall have power to convene the legislature, or the senate only, on extraordinary occasions. At extraordinary sessions no subject shall be acted upon, except such as the governor may recommend for consideration. He shall communicate by message to the legislature at every session the condition of the state, and recommend such matters to it as he shall judge expedient. He shall expedite all such measures as may be resolved upon by the legislature, and shall take care that the laws are faithfully executed.”
In Rapp v Carey (44 NY2d 157) the Court of Appeals was faced with a situation of a Governor invading the legislative domain through the device of an executive order. In that case former Governor Carey issued an executive order which required the annual filing of financial disclosure statements by certain State employees, prohibited service in political party office, and regulated outside activity and employment. The purpose of the order, i.e., promoting ethics in government, was, as is the case, here, laudable. The scheme itself was reasonable, and if enacted by the Legislature could have been upheld. The problem was that the Legislature had not so acted and through the executive order the Governor was invading the legislative sphere. In *891 the majority opinion, former Chief Judge Breitel instructed: “There are * * * limits to the breadth of executive power. The State Constitution provides for a distribution of powers among the three branches of government * * * This distribution avoids excessive concentration of power in any one branch or in any one person. Where power is delegated to one person, the power is always guided and limited by standards. In fact, even the Legislature is powerless to delegate the legislative function unless it provides adequate standards * * * Without such standards there is no government of law, but only government by men left to set their own standards, with resultant authoritarian possibilities” (Rapp v Carey, 44 NY2d 157, supra, p 162). “The crux of the case is the principle that the Governor has only those powers delegated to him by the Constitution and the statutes” (supra, p 166). “Under our system of distribution of powers with checks and balances, the purposes of the executive order however desirable, may be achieved only through proper means. No single branch of government may assume a power, especially if assumption of that power might erode the genius of that system. The erosion need not be great. ‘Rather should we be alive to the imperceptible but gradual increase in the assumption of power properly belonging to another department’ ” (supra, p 167).
Defendants have not advanced any provision of the Constitution or any statute authorizing the Governor to establish a State program for voter registration. The absence of that authority establishes the likelihood that the plaintiff will ultimately prevail in this action.
The irreparable injury to this plaintiff, and all of the citizens of the State, if the plan is permitted to be implemented, is manifest. All the citizens of the State suffer when one branch of government exceeds its authority at the expense of another. Such a situation should not be tolerated for even a day. The keeper of the law must be subject to it. As to a balancing of the equities, the court fails to discern what harm defendants would suffer if the status quo is maintained until this action is determined. The State of New York has survived for over 200 years without the benefit of the voter registration program set *892 forth in Executive Order No. 43 and no doubt it will continue to do so for the short period of time it should take for this litigation to be decided.
The motion of the plaintiff for an order granting a preliminary injunction restraining the defendants, their agents, servants and employees, and all persons acting in concert with them, pending the determination of this action, from taking any action whatsoever to enforce and implement Executive Order No. 43 issued by defendant Governor Mario M. Cuomo on July 9,1984 will be granted, without costs. In the exercise of discretion, the filing of a bond will be waived.

 The Governor does not possess the authority to formulate the public policy of this State in the area of distribution of voter registration forms. It is settled that “a state can have no public policy except what is to be found in its Constitution and laws * * * Therefore, when we speak of the public policy of the state, we mean the law of the state, whether found in the Constitution, the statutes or judicial records” (People v Hawkins, 157 NY 1, 12). The Governor is not the author of the Constitution, statutes or judicial records of the State; thus, he does not write its public policy. The Legislature, through subdivision 2 of section 5-210 of the Election Law, has delegated the governmental function of seeing to the distribution of registration applications to the county boards of elections, not the Governor. “The public policy of this State where the Legislature acts is what the Legislature says it shall be” (Rozell v Rozell, 256 App Div 61, 62, affd 281 NY 106).