GEORGE L. CLARK, JR., Individually and as Chairman of the New York Republican State Committee, Respondent, v MARIO M. CUOMO, as Governor of the State of New York, et al., Appellants.

Third Department, September 7, 1984

APPEARANCES OF COUNSEL

*Robert Abrams,* Attorney-General (*John Q. Driscoll* of counsel), for appellants.

*Thomas J. Spargo* for respondent.

*Arthur Eisenberg* for New York Civil Liberties Union, *amicus curiae.*

*Julius Chambers, Joel Berger* and *Lani Guinier* for The League of Women Voters of New York State and six other organizations, *amici curiae.*

OPINION OF THE COURT

MAHONEY, P. J.

On July 9, 1984, the Governor of the State of New York issued Executive Order No. 43 directing State agencies which have regular contact with the public, including the Departments of State, Labor, Motor Vehicles and Social

Services and the Workers' Compensation Board, to conduct voter registration projects to assist citizens in registering to vote. Specifically, the executive order directs the agencies to make mail registration forms available and to make staff members available to assist the public in completing the forms. The executive order further provides that the project shall be conducted in public areas of the agencies and that staff members shall render assistance in completing the registration forms in accordance with guidelines of the State Board of Elections and shall maintain a position of strict political neutrality.

Plaintiff, Chairman of the New York Republican State Committee, commenced this action seeking to permanently enjoin implementation of the executive order on the grounds that it is unconstitutional and illegal. Plaintiff then moved for a preliminary injunction enjoining implementation of the executive order. The motion was brought on by order to show cause which contained a temporary restraining order enjoining implementation of the executive order pending determination of the motion for a preliminary injunction. By order entered August 2, 1984, Special Term granted plaintiff's motion (123 Misc 2d 885). Defendants took this appeal, thereby effecting an automatic stay of the order (CPLR 5519, subd [a], par 1). Plaintiff's motion to vacate the stay was denied by this court on August 23, 1984.

The sole issue on this appeal is whether Special Term properly granted plaintiff's motion for a preliminary injunction. In order to be entitled to a preliminary injunction, the moving party must demonstrate (1) a likelihood of success on the merits, (2) irreparable injury to him if the relief is not granted, and (3) a balancing of the equities in his favor (see *Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.,* 70 AD2d 1021, 1022, app dsmd 48 NY2d 654; *Picotte Realty v Gallery of Homes,* 66 AD2d 978). In reviewing a decision on a motion for a preliminary injunction, we are constrained to act cautiously lest we finally determine the merits of the action. That issue must be resolved at trial (*Niagara Recycling v Town of Niagara,* 83 AD2d 316, 324). Our review is limited to determining whether Special Term erred in finding that plaintiff had

satisfactorily met his burden as to all three of the criteria delineated above which would entitle him to a preliminary injunction. While the grant or denial of a preliminary injunction rests within the discretion of Special Term (*James v Board of Educ.,* 42 NY2d 357, 363; 7A Weinstein-Korn-Miller, NY Civ Prac, par 6301.13), it is a drastic remedy which should be used sparingly (see *Gulf & Western Corp. v New York Times Co.,* 81 AD2d 772, 773; *Town of Porter v Chem-Trol Pollution Servs.,* 60 AD2d 987, 988).

We conclude that Special Term abused its discretion in finding that plaintiff demonstrated that he would suffer irreparable harm if defendants were not preliminarily enjoined. The only claim advanced by plaintiff in this regard in his moving papers is the conclusory assertion that "as a Republican voter and Chairman of the New York State Committee, [he] will be deprived of a very serious protected right to the assurance of a [*sic*] bi-partisan registration procedures". No specifics were advanced by plaintiff as to how he would be injured by the implementation of Executive Order No. 43. Indeed, Special Term found plaintiff's unsupported allegation of deprivation of a "protected right" to be insufficient to establish the requisite irreparable harm, and based its finding of such an injury on its conclusion that the Governor had exceeded his authority in relation to the Legislature. According to Special Term, the irreparable injury "is manifest" (123 Misc 2d 885, 891, *supra*). We submit that this perception of injury to plaintiff may not only be more theoretical than real, it is a determination that should only be reached after resolution of the action for a permanent injunction. Ultimate injury is not the test to determine if a preliminary injunction should be granted. The test is immediate injury which, in our view, has not been demonstrated by plaintiff.

Subdivision 13 of section 3-102 of the Election Law directs the State Board of Elections to "take all appropriate steps to encourage the broadest possible voter participation in elections". Further, subdivision 2 of section 5-210 of the Election Law provides that "[e]ach county board of elections shall also cause such application forms to be as widely and freely distributed as possible". Thus, while it may be argued that the Legislature, and not the Governor,

is to determine the vehicle by which registration forms should be distributed, the Legislature has explicitly declared a public policy in favor of the broadest possible voter registration. This end will be achieved by that part of Executive Order No. 43 which makes mail registration forms available to the public. We note in this regard that there is no allegation that any registrations accomplished as a result of Executive Order No. 43 will be void or somehow tainted should it ultimately be determined that the executive order was improperly issued. As pointed out in the *amici curiae* brief, various organizations have, in the recent past, undertaken voter registration drives which have included the distribution of mail registration forms.

At oral argument, plaintiff raised several issues not contained in his brief. Specifically, plaintiff charges that interference by State agencies in requesting that they be supplied with a huge number (200,000 reported in the press) of mail registration forms amounts to an act of "confiscation" such that county boards of elections will be unable to comply with normal requests for such forms from local organizations. Plaintiff was unable to articulate, nor does the record establish, the number of such forms available across the State or at any particular county board of elections. It would appear, given the appallingly low percentage of voter participation in this State,* that proof of immediate irreparable harm should not depend on the availability of a finite number of forms. Further, Executive Order No. 43 simply provides that State agencies shall make registration forms available. It does not give agencies authority to "confiscate" forms, nor does it order county boards of elections to turn over forms. The power of distribution of forms is granted by statute to the local boards of elections (Election Law, § 5-210, subd 2).

Finally, plaintiff suggests that, since State agencies will have temporary control over the completed registration forms prior to transmittal to the local boards, some unidentified act inimical to plaintiff's interests could occur. Since this suggestion necessarily rests on a presumption that State agencies will act improperly, it cannot support plaintiff's claim of immediate irreparable harm.

---

* In New York State in 1982, 56.5% of eligible voters registered and only 48.2% of those registered actually voted.

We therefore conclude that, while we are constrained from reaching the issue of harm to plaintiff resulting from the initiation of the voter registration program by the executive rather than by the legislative branch of government, an issue that must await resolution of this action, we perceive no immediate irreparable harm to plaintiff which would be more burdensome to him than the effect of a preliminary injunction on defendants' program to increase voter registration (see *Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp., supra; Metropolitan Package Store Assn. v Koch,* 80 AD2d 940).

Having concluded that plaintiff is not entitled to a preliminary injunction due to his failure to show irreparable injury, we find it unnecessary to discuss the remaining two prerequisites for a preliminary injunction, i.e., likelihood of success on the merits and balancing of equities, and express no opinion on those issues.

CASEY, J. (dissenting). We dissent and are to affirm, essentially for the same reasons as those stated by Justice Harold J. Hughes in his opinion at Special Term (123 Misc 2d 885). The majority bases its reversal mainly on a finding that plaintiff has failed to demonstrate irreparable harm. We disagree. It is apparent to us that the measure of relief to which plaintiff will be entitled, in the event he is finally successful in the main action, will be substantially, permanently and irretrievably impaired by the registration activity that is permitted to continue under the executive order from now until the action is resolved, without the restraint of a preliminary injunction. Maintenance of the *status quo* is the object of a preliminary injunction (*Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.,* 70 AD2d 1021, 1022, app dsmd 48 NY2d 654), but the courts are reluctant to grant a preliminary injunction where it has the effect of affording a party the relief ultimately sought in the action (see, e.g., *Morgan v New York Racing Assn.,* 72 AD2d 740, 741). Special Term's order herein runs afoul of neither of these principles.

The executive order at issue in this action seeks to implement a wholly new scheme of encouraging and aiding voter registration, a scheme which has not previously been used. Denial of plaintiff's motion for a preliminary injunc-

tion permits the implementation of this new and untried program, thereby substantially altering the *status quo,* while Special Term's order granting plaintiff's motion promotes the recognized purpose of maintaining the *status quo.* Granting the preliminary injunction does not, on the other hand, effectively award plaintiff the ultimate relief sought, which is to enjoin permanently the implementation of the program. If defendants succeed on the merits, the program can be implemented at that time; a few weeks' delay neither frustrates the purpose of the program to encourage and assist voter registration nor impairs the ability of any voter to register. The absence of any harm to defendants is particularly relevant where, as here, a preliminary injunction is necessary to maintain the *status quo* (see *City Store Gates Mfg. Corp. v United Steel Prods.,* 79 AD2d 671). Our review is limited to whether Special Term abused its discretion in granting a preliminary injunction (*R & J Bottling Co. v Rosenthal,* 40 AD2d 911, 912), and in our view the circumstances of this case do not reveal any abuse of discretion (see *Matter of Addesso v Sharpe,* 56 AD2d 904). Special Term's order should be affirmed.

WEISS and LEVINE, JJ., concur with MAHONEY, P. J.; CASEY and HARVEY, JJ., dissent and vote to affirm in an opinion by CASEY, J.

Order reversed, on the law, without costs, and plaintiff's motion denied.