Jasen, J.
(dissenting in part). I would reverse the order of the Appellate Division and hold the challenged Executive Order unconstitutional. The issue is not whether it is desirable to encourage the broadest possible voter participation in elections, but, rather, whether Executive Order No. 43 constitutes a patent infringement upon the legislative function. Because I believe that the establishment of a "State Program for Voter Registration” by Executive Order conflicts with the existing statutory scheme governing voter registration, and establishes a program which has been specifically considered and rejected by the Legislature, I respectfully dissent.
The State Constitution provides for a distribution of powers among the three branches of government. (See, NY Const, art III, § 1; art IV, § 1; art VI.) Article II, § 5 of the Constitution provides that laws should be made for the registration of voters. This constitutional directive, originally incorporated in the Constitution at the Convention of 1821, "imposed a duty upon the legislature, which was vested with entire control of the subject”. (3 Lincoln’s Constitutional History of New York, at 91 [emphasis suppled]; Matter of Ahern v Elder, 195 NY 493, 497.) As a matter of law, as well as history, it cannot be disputed that the Legislature has constitutionally been vested with plenary power to establish policy affecting voter registration.
The constitutionality of an Executive Order, which operates with full force of law,[1] is wholly contingent upon whether there exists a specifically conferred legislative authorization for the gubernatorial act. (Under 21 v City of New York, 65 NY2d 344, 359; Subcontractors Trade Assn. v Koch, 62 NY2d 422, 429; Rapp v *194 Carey, 44 NY2d 157, 162.) The majority fails to cite any legislative source of authority specifically conferring upon the Governor the power to promulgate Executive Order No. 43.
Obviously, there is no express or implied legislative authorization for Executive Order No. 43. To overcome this lack of a specific legislative authorization, the majority seeks to characterize and justify the Executive Order as an implementation of legislative policy, saying that: "The Legislature has declared its policy that 'the state board of elections shall have the power and duty * * * to encourage the broadest possible voter participation in elections’ (Election Law § 3-102 [13]). Registration application forms, it has further declared, are to be given by a County Board of Elections to 'any person’ requesting them; each County Board 'shall also cause such application forms to be as widely and freely distributed as possible’ (Election Law § 5-210 [2]).” Without explanation, and in contravention of recent precedent (Matter of Prospect v Cohalan, 65 NY2d 867), the majority finds in said statutory language a conferral of power upon the Executive Branch. This view is in error.
Election Law § 3-102 (13) and § 5-210 (2) represent a legislative policy to designate the bipartisan Boards of Election the exclusive official instruments for distributing registration materials. A legislative judgment has been rendered that the official distribution of registration materials .be conducted in a manner established by, and under the control of, Boards of Election. Indeed, the majority recognizes, as it must, that State and local Boards of Election are charged with the implementation of the policy of broad distribution of voter registration materials. (Majority opn, at p 190.) In my opinion, Executive Order No. 43 amends the Election Law by creating a Task Force to administer a State program of distribution of registration materials which, as the majority concedes, "clearly do[es] not afford * * * bipartisan representation” and is effectuated by State employees not under the control of the Boards of Election. A determination that the Governor lacks the power to unilaterally establish State policy affecting voter registration in no way hinders private voter registration drives which have flourished under the existing statutory scheme. The Election Law does, however, limit State participation in voter registration programs to those conceived and executed by bipartisan Boards of Election. The incidental participation of Boards of Election in the State Program for Voter Registration does not eliminate the inherent conflict between Executive Order No. 43 and the Election Law.[2]
*195 Nor may it be said that the Legislature has implicitly authorized Executive Order No. 43. The program established by the Governor has repeatedly been considered and rejected by the Legislature. Legislation was introduced to require each County Board of Elections to distribute registration application forms to the public through distribution to Federal, State and local government buildings, banks, post offices and various other facilities. This legislation, which recognizes the proper role of the County Boards of Election in the distribution of registration materials, has not received passage.[3] (Cf. Under 21 v City of New York, 65 NY2d 344, 356, supra.) Thus, this is not a case where legislative inertia or acquiescence has opened the door to this Executive Branch initiative. (See, Youngstown Co. v Sawyer, 343 US 579.)
The view expressed by the majority today is wholly incongruous with the court’s recent decision in Matter of Prospect v Cohalan (65 NY2d 867, supra). In that case, the court was presented with the question whether the County Executive was authorized to establish, by Executive Order, a disaster preparedness plan, to be utilized in the event of a disaster at a nuclear power plant located within his jurisdiction. The County Executive contended that authority to establish such a plan was derived from Executive Law § 20 (1) (b) which articulated a policy of involving local *196 chief executives in the development and implementation of disaster preparedness programs. A majority of this court disagreed and held that Executive Law § 23 (1), which provides that each "county” is authorized to prepare disaster preparedness plans, represents a conferral of authority upon the legislative and not the Executive Branch. Thus, a divided court in Cohalan held that where the State Legislature has specifically conferred authority to establish a particular program upon the "county”, and the County Executive attempts to develop and implement such a program by Executive Order, said order is deemed "a clear usurpation of the legislative function”. (65 NY2d, at p 870.) The view expressed by the majority today, that an Executive may unilaterally create a "Task Force” to develop and implement a plan for voter registration despite the fact that the Legislature has specifically conferred upon bipartisan Boards of Election the authority to establish and implement such a program, is irreconcilable with Cohalan. The majority’s attempt to distinguish Cohalan from the case at bar is unavailing.
The role of the Judiciary, when presented with a constitutional challenge to an Executive Order, is not to construct an authorization for the order, but to demand that the Executive specify its source of authority. (Matter of Doyle, 257 NY 244, 268 [Cardozo, Ch. J.]; Northern Securities Co. v United States, 193 US 197, 400 [Holmes, J., dissenting].) While I may be fully sympathetic to the substance of the policy initiative at issue, the "State Program for Voter Registration” as established by Executive Order No. 43 manifestly conflicts with the voter registration program provided for in the Election Law and adopts a policy explicitly rejected by the Legislature. Thus, it constitutes a nullification of legislative will and an ultra vires act.
Judges Meyer, Simons, Kaye, Alexander and Titone concur with Chief Judge Wachtler; Judge Jasen dissents in part and votes to reverse on plaintiff’s appeal in a separate opinion.
Defendants’ cross appeal dismissed, without costs. Defendants’ oral motion for leave to appeal granted. Order affirmed, without costs.

. Former Chief Judge Breitel has realistically observed that an Executive Order has "complete effect as if a 'law’ had been passed by the legislative branch”. (Breitel, The Lawmakers, Benjamin N. Cardozo lectures delivered before Assn of Bar of City of NY, at 807, 827, Mar. 23, 1965; see also, 20 Record of Assn of Bar of City of NY 180,201.) Where, as here, the Executive Order directs, rather than requests, State agencies or employees to conduct a designated program, the order has the force and effect of law. (Matter of Di Brizzi [Proskauer], 303 NY 206, 213; Sterling v Constantin, 287 US 378, 399 [Hughes, Ch. J.].)

. The legislative judgment to vest only Boards of Election with the responsibility to distribute registration materials is vindicated by this case. Pursuant to *195 Election Law § 5-210 (4) (f), the uniform State-wide application form must include "[njotice that political party enrollment is optional but that, in order to vote in a primary election of a political party, a voter must enroll in that political party”. The application for registration and enrollment by mail accordingly states "Enrollment in a political party is optional but if the applicant wishes to vote in a primary election of a political party he must be enrolled in that party”. The signs utilized in the Governor’s "State Program For Voter Registration” state, in bold print, "You must be enrolled in a party to vote in a primary”. (Record, at p 100.) This statement, presumably selected in the discretion of the Voter Registration Task Force, which is not bipartisan, fails to note the optional nature of party enrollment, and lacks the context required by Election Law § 5-210 (4) (f).
Furthermore, Election Law § 5-210 establishes the circumstances under which the State may assist an individual in completing voter registration forms. This section denominates the County Boards of Election as the only official agencies authorized to provide assistance. Executive Order No. 43 requires State employees, unaffiliated with any Board of Elections, to assist individuals in completing voter registration forms. Executive Order No. 43 thus defeats the legislative policy that official assistance in the completion of voter registration forms be rendered only by the bipartisan, professional staffs of County Boards of Election.

. See, 2 New York State Legis Digest, 1985, at 148, A 1739, S 2275 (the legislation passed the Assembly and died in the Senate Rules Committee); see also, A 3770-A of 1983-1984.