NEW YORK STATE THRUWAY AUTHORITY et al., Respondents, v WALTER E. DUFEL et al., Appellants.

In the Matter of WALTER E. DUFEL et al., Appellants, v STATE OF NEW YORK et al., Respondents.

Third Department, June 15, 1987

## APPEARANCES OF COUNSEL

*Robert J. Krzys* for appellants.

*Robert Abrams, Attorney-General (Edward M. Scher* of counsel), for respondents.

## OPINION OF THE COURT

MAHONEY, P. J.

On April 5, 1987, the New York State Thruway bridge spanning the Schoharie Creek in Montgomery County collapsed. On April 7, Governor Mario Cuomo declared a disaster emergency within areas of Schoharie, Montgomery and Ulster Counties affected by the extreme flood conditions which apparently contributed to the bridge collapse. Because of the bridge collapse, Thruway traffic had to be rerouted onto local highways. The eastbound detour is about six miles long and the westbound detour is about 35 miles long. The detours consist largely of two-lane rural undivided highways and, since the detours were constructed, the highways have experienced an increase in traffic of about 7,500 vehicles per day. The traffic problems created by the detour may have contributed to two fatal accidents on the detour highways.

To alleviate the problem, the Department of Transportation and the Thruway Authority (hereinafter collectively referred to as the State) decided upon an alternate detour route which would greatly decrease the need to travel on local highways and would shorten the detour to about one mile in each direction. The alternate plan required the appropriation of 21

acres of the 110-acre farm owned by Walter E. Dufel and Reva Dufel. The property will be needed for about one year while a new permanent Thruway bridge is being built. The State filed appropriation maps with the Montgomery County Clerk on May 1, 1987 and thereby took title to the property (see, EDPL 402 [A] [3]).[1] On the same day, the State awarded contracts worth about $5.7 million for construction of the temporary detour. Work commenced on May 4, 1987 but came to a halt on May 7, 1987 when the Dufels erected a barricade. The State commenced an action for a permanent injunction to prevent the Dufels from interfering with the construction work. In the context of the action, the State moved for a preliminary injunction and obtained a temporary restraining order. The Dufels then commenced a CPLR article 78 proceeding seeking to enjoin the State from proceeding with construction until it complied with certain State and Federal laws. Supreme Court dismissed the CPLR article 78 proceeding and granted the State's motion for a preliminary injunction. These appeals by the Dufels ensued.

Dealing first with the State's motion for a preliminary injunction, such relief is appropriate where a movant demonstrates a likelihood of success on the merits, irreparable injury if the injunction is not granted and a balancing of equities in favor of the movant (see, Clark v Cuomo, 103 AD2d 244, 245, affd 63 NY2d 96). Here, the State alleges compliance with the applicable procedures set forth in the EDPL and the Dufels do not raise any objections based on this statute. Thus, title to the land is vested in the State (see, EDPL 402 [A] [3]) and it is entitled to construct the highway on such property without interference.

The Dufels' challenge based on State law is that the State failed to comply with the State Environmental Quality Review Act (SEQRA) (ECL art 8), the Agricultural Districts Act (Agriculture and Markets Law art 25AA), the Floodplain Management regulations (6 NYCRR part 502) and the Freshwater Wetlands regulations (6 NYCRR part 663). It is conceded that the State has not complied with the procedural and substantive requirements of SEQRA. However, actions are exempt from SEQRA requirements where they are "necessitated by emergencies" (17 NYCRR 15.12 [f]) or "immediately necessary on a limited emergency basis for the protection or

---

1. The parties refer to the nature of the State's interest in the property as a "temporary easement".

preservation of life, health, property or natural resources" (6 NYCRR 617.2 [o] [6]). In reviewing emergency determinations, the standard of judicial review is not whether the court would conclude that an emergency exists, but whether the determination that an emergency exists is irrational or arbitrary or capricious (Matter of Board of Visitors—Marcy Psychiatric Center v Coughlin, 60 NY2d 14, 20). Further, it is clear from Marcy that it is for the agency taking the action to determine whether an emergency exists. Here, the State offered proof that the collapse of the Thruway bridge necessitated the creation of lengthy detours on local highways which were not designed to handle the type and volume of traffic which travels the Thruway. The various local highways, which previously handled 1,000 to 3,000 vehicles per day, now must handle 7,500 vehicles per day in each direction. Moreover, approximately 20% of the additional traffic consists of large tractor trailers. Further, during the peak summer season which is approaching, it is estimated that the use of the detours by Thruway traffic will increase to 30,000 vehicles per day.

Based on these factors, the State determined that the use of the existing detours posed a safety hazard to users of the Thruway as well as local drivers. Also, an increase in traffic of these proportions was determined to be destructive to the local highways. Considering all of these facts, the State's determination that an emergency exists can hardly be said to be irrational. The Dufels' contention that other detour routes could be used must be rejected since the inquiry is whether the State's determination is rational, not whether other alternatives are preferable. In any event, the record indicates that the State carefully considered all options before choosing the proposed detour. Finally, there is insufficient evidence that the proposed detour creates any hazard greater than it was designed to eliminate. Thus, we concur with Supreme Court's conclusion that the State's determination of an emergency must be upheld. Accordingly, SEQRA regulations are not applicable to this detour project.

The Dufels' challenge based on the Agricultural Districts Law must be rejected on similar analysis. A State agency intending to acquire land in an agricultural district must first file a notice of intent with the Commissioner of Agriculture and Markets (Agriculture and Markets Law § 305 [4] [a]). However, such notice requirement is not applicable "to any emergency project which is immediately necessary for the

protection of life or property" (Agriculture and Markets Law § 305 [4] [f]). As discussed earlier, the State properly concluded that an emergency situation existed.

Next, the Dufels contend that the proposed detour project violates the Floodplain Management regulations which provide that no State project shall be undertaken unless it is demonstrated that the cumulative effect of the proposed project will not increase the existing water surface elevation of the base flood more than one foot at any point.[2] The State submitted evidence that, based on a base flood flow of 80,000 cubic feet per second (a 20% greater flow than that which occurred during the April 5, 1987 storm), the proposed detour would create no change in backwater elevation; downstream, there would be only a slight variation in water velocity. The State's evidence resulted from actual tests performed on the Schoharie Creek. The Dufels submitted the affidavit of a geologist, who conducted no independent research but nevertheless concluded that the State's evidence was inaccurate.[3] Supreme Court credited the State's evidence and thus concluded that the State was in compliance with 6 NYCRR 502.4 (a) (15). In our view, the State's reliance on its expert report was not irrational. We are of the further view that the State's evidence establishes that the cumulative effect of the project will not cause any "material flood damage to such existing development" (6 NYCRR 502.4 [a] [16]).

The Dufels also point out that 6 NYCRR 502.4 (a) (2) requires that State projects in flood hazard areas must obtain all necessary Federal permits, and that 33 USC § 401 mandates that no bridge be constructed over or in any navigable waters of the United States without a permit from the United States Army Corps of Engineers. The proposed detour project includes the renovation of an abandoned railroad bridge. The State contends that it is not "constructing" a bridge, but is simply rehabilitating an existing bridge. This argument has been accepted by one Federal court (see, Puente de Reynosa v City of McAllen, 357 F2d 43, 49) and it does justice to the statute since the rehabilitation of a bridge entails none of the

2. The instant project is a "riverine" situation (see, 6 NYCRR 502.2 [w]). "Base flood" is defined in 6 NYCRR 502.2 (c) as "the computed water surface elevation at a given location resulting from a flood having a one-percent chance of being equalled or exceeded in any given year".

3. The Dufels also refer to a Cornell University study. However, that study was not accepted by Supreme Court because it was not timely filed. Thus, it is not part of the record on this appeal.

intrusion into navigable waters that the construction of a bridge does. Further, the Federal regulations contain an exception for repairs to bridges which do not alter the clearances, type of structure, or integral part of the substructure or superstructure (33 CFR 115.40). Therefore, we agree with Supreme Court that the State has not violated 6 NYCRR 502.4 (a) (2) by failing to obtain the Federal bridge permit.

Next, the State failed to obtain a freshwater wetlands permit (see, 6 NYCRR 663.3). However, the actual construction on the proposed detour will not occur in areas which have been designated as wetlands by the Department of Environmental Conservation.

The Dufels also contend that the State has failed to comply with several Federal statutes, specifically the National Environmental Policy Act (42 USC § 4321 et seq.), the Farmland Protection Policy Act (7 USC § 4201 et seq.) and Executive Order No. 11988 (Floodplain Management, 42 Fed Reg 26951). However, we agree with Supreme Court that the proposed detour is not a "major Federal action" (see, 42 USC § 4332 [2] [C]) such that the National Environmental Policy Act and Executive Order No. 11988 are not applicable. A major Federal action is one that is Federally funded or is significantly bound up in a Federally funded project (see, Citizens for Responsible Area Growth v Adams, 680 F2d 835, 839). The instant case involves a State-funded project. Though the State may have filed preliminary documents to apply for some Federal funding, such has not been received or even approved. Thus, this is not a Federally funded project. Further, there has been no "overt act" on the part of any Federal agency (see, Defenders of Wildlife v Andrus, 627 F2d 1238, 1245). Finally, we note that, like SEQRA, the regulations of the National Environmental Policy Act have provisions dispensing with compliance in emergency situations (40 CFR 6.106 [b]; 1506.11).

Regarding the Farmland Protection Policy Act, this statute is intended to regulate Federal programs (7 USC § 4201 [b]) such that only the Governor, and not private citizens, may enforce its provisions (7 USC § 4209).

Since the State has demonstrated compliance with the EDPL and all of the Dufels' challenges to the project are without merit, it is apparent that the State has demonstrated a likelihood of success in its actions for a permanent injunction. Further, the irreparable harm is obvious. The current

detour is inadequate and the Thruway's peak usage period is approaching. There has already been interference with construction and, if it continues, the detour will not be completed in a timely fashion. Thus, the State has established that, without the preliminary injunction, it will be irreparably harmed.

Finally, a balancing of equities weighs in favor of the State. The preliminary injunction will only last until the action for a permanent injunction is resolved. Further, the detour will only last until a permanent Thruway bridge is constructed. Thus, the taking is temporary. While the Dufels will unquestionably be economically damaged, they will be compensated for the taking. Further, if it is ultimately determined that the preliminary injunction should not have been issued, they will have a remedy (see, CPLR 2512 [1]). Weighing against this is the safety of thousands of motorists who travel the Thruway and the local highways currently used as the detour.

In conclusion, we affirm Supreme Court's granting of the preliminary injunction. Also, since it is clear that none of the Dufels' challenges to the State's action have merit, Supreme Court's dismissal of the petition in the CPLR article 78 proceeding was also proper.

WEISS, YESAWICH, JR., LEVINE and HARVEY, JJ., concur.

Order and judgment affirmed, without costs.