OPINION OF THE COURT
Harold J. Hughes, J.
The Attorney-General initiated this proceeding pursuant to Executive Law § 63 (12) alleging that Ford Motor Company is engaged in persistent fraudulent conduct in violation of General Business Law § 198-a (the Lemon Law) by charging its customers the first $100 of warranty repair work for repairs performed under its extended powertrain warranty when the vehicle has more than 12,000 miles and less than 18,000 miles upon its odometer. The relief sought is: (1) a permanent injunction barring Ford from engaging in the illegal practice; (2) full restitution to all consumers who paid the $100 repair charge; (3) $2,000 in statutory costs. Prior to answer, Ford made a motion to dismiss the petition upon the objections in point of law that: (1) the petition fails to state a cause of action; (2) the Federal Magnuson-Moss Warranty Act (15 USC § 2301 et seq.) preempts New York’s Lemon Law to the extent that it is interpreted to impose an obligation upon Ford to disclose the Attorney-General’s interpretation of section 198-a; and (3) the Lemon Law is unconstitutional on its face and as *830 applied to Ford under the commerce clause and supremacy clause of the United States Constitution. The motion was given summary judgment treatment (see, Matter of White, 35 AD2d 933), and Ford served its answer rendering the case ready for summary determination.
By Laws of 1983 (ch 444), the Legislature enacted New York State’s Lemon Law, effective September 1, 1983. The statute provides protection to purchasers of new cars by requiring the manufacturer to replace the vehicle or refund the purchase price if a substantial defect in the automobile cannot be repaired after a reasonable number of attempts. The portions of the law at issue in this proceeding are paragraph (3) of subdivision (a) of section 198-a which defines a manufacturer’s express warranty to mean "the written warranty, so labeled, of the manufacturer of a new automobile, including any terms or conditions precedent to the enforcement of obligations under that warranty”, and subdivision (b) of the same section which provides: "If a new motor vehicle does not conform to all express warranties during the first eighteen thousand miles of operation or during the period of two years following the date of original delivery of the motor vehicle to such consumer, whichever is the earlier date, the consumer shall during such period report the nonconformity, defect or condition to the manufacturer, its agent or its authorized dealer. If the notification is received by the manufacturer’s agent or authorized dealer, the agent or dealer shall within seven days forward written notice thereof to the manufacturer by certified mail, return receipt requested. The manufacturer, its agent or its authorized dealer shall correct said nonconformity, defect or condition at no charge to the consumer, notwithstanding the fact that such repairs are made after the expiration of such period of operation or such two year period.”
The Attorney-General construes the foregoing language to mean that during the first 18,000 miles or two years of operation (whichever occurs first) the manufacturer must repair all defects covered by an express warranty free of charge. Since the inception of the law, Ford has interpreted the language to permit the $100 charge called for in its extended powertrain warranty. Ford’s argument is that the definition of manufacturer’s express warranty allows conditions precedent to be a part thereof. Ford contends that its $100 service charge for powertrain repairs performed between 12,000 and 18,000 miles is a condition precedent. Ford construes the last sentence of subdivision (b) to mean that if a *831 purchaser reports a covered defect during the first 18,000 miles or two years of operation, and the manufacturer cannot successfully repair it during that period, repairs upon the same defect performed after the first 18,000 miles or two years must be done free of charge. The conflict in statutory interpretation gives rise to this proceeding.
The petition alleges that Ford gives an express limited warranty upon its vehicles which includes extended power-train coverage. During the first 12 months or 12,000 miles Ford performs all repair work free of charge. Under the extended powertrain coverage repairs upon the powertrain for defects that occurred during the first two years or 24,000 miles will be paid for after the consumer pays the first $100 of the cost of the covered warranty repair. The first cause of action asserts that repeatedly imposing the $100 charge is a persistent violation of the Lemon Law, amounting to a continuing fraud. Executive Law § 63 (12) permits the Attorney-General to bring a special proceeding such as this in Supreme Court to enjoin persistent consumer fraud. The second cause of action alleges that Ford is engaged in persistent fraudulent conduct by misrepresenting to its consumers that despite the Lemon Law they must pay the $100 service charge.
The first issue for determination is which party has correctly construed the statute. The gravamen of Ford’s position is that whatever may have been the intent of the Legislature, a literal reading of the statute supports its construction. Ford points out that there has been repeated failed attempts to amend the Lemon Law to bring it in line with the Attorney-General’s reading. The appellate courts have decreed that the nonpassage of legislation is to be accorded little weight in construing a statute.
In Clark v Cuomo (123 Misc 2d 885, revd 103 AD2d 244, affd 63 NY2d 96), this court was asked to grant a preliminary injunction restraining Governor Cuomo from implementing his voter registration plan. The issue before the court was whether the plaintiff was likely to succeed in his argument that the Election Law prohibited the Governor’s plan which provided for distribution of voter registration applications in Federal, State and local governmental buildings. An identical plan had repeatedly been introduced in the Legislature as a proposed amendment to the Election Law. The Assembly passed the bill, but the Republican-controlled Senate did not. This court, and Justice Kahn in his later decision on the merits (Clark v Cuomo, 125 Misc 2d 968, revd 104 AD2d 188, *832 affd 66 NY2d 185), took the pragmatic view that there would not be repeated attempts to amend the Election Law if it already permitted the Governor to unilaterally implement his voter registration plan. In reversing this court and Justice Kahn, the Third Department determined that the Election Law permitted the voter registration plan enacted by the Governor (Clark v Cuomo, 104 AD2d 188, 191, 192, affd 66 NY2d 185, supra).
Returning to the interpretation issue, in this court’s view the primary rule of statutory construction is to implement the Legislature’s intent. Hopefully, the words chosen by the Legislature will ease that task. The legislative purpose behind the enactment of the new car Lemon Law is to give New York State consumers greater redress for defects in a new car than is afforded by the manufacturers’ express limited warranties and existing Federal law (see, Givens, Practice Commentary, McKinney’s Cons Laws of NY, Book 19, General Business Law § 198-a, pp 109-116 [1987 Pocket Part]). It must be construed to that end. Ford’s interpretation would emasculate the statute, since under it a consumer would enjoy no greater protection after the enactment of the Lemon Law than he or she did before. The sole redress of the consumer would be whatever protection the manufacturer chose to insert in its limited express warranty.
The language of General Business Law § 198-a (b) requires that during the first 18,000 miles of operation or two-year period following delivery (whichever occurs first) a new car manufacturer must repair, free of charge, any nonconformity, defect or condition in the vehicle which is covered by an express warranty. The language of paragraph (3) of subdivision (a) of section 198-a which recognizes conditions precedent contained in a written warranty only does so with respect to conditions precedent that are not in conflict with the Lemon Law. In other words, a condition precedent which attempts to vitiate, or conflict with, the new car Lemon Law will not be enforced in this State. To hold otherwise would be contrary to the clear intent of the statute. All a new car manufacturer would have to do would be to insert language in its limited express warranty like "as a condition precedent to coverage under this warranty a customer shall waive resort to any available state or local remedy”. Clearly, such a condition precedent cannot be tolerated. Likewise, assuming, arguendo, that the $100 service charge is a condition precedent, it will *833 not be given force or effect in this State as it conflicts with New York’s new car Lemon Law.
One of the major affirmative defenses raised by Ford is that General Business Law § 198-a violates US Constitution, article I, § 8 because it imposes an unreasonable burden upon the flow of interstate commerce and attempts to regulate and affect conduct occurring in other States. Ford contends that "To the extent that General Business Law § 198-a purports to dictate the terms of an express warranty offered by an automobile manufacturer such as Ford, it has the impermissible tendency and affect of regulating conduct outside the boundaries of the State of New York and of affecting the warranty rights available to, and prices paid by, consumers residing in other states”. Ford points out that more than 40 other States have enacted Lemon Laws, all imposing differing obligations upon car manufacturers. Ford argues that there is a need for one national uniform law upon the basic terms of a warranty offered by an automobile manufacturer and that compelling a car manufacturer to meet over 40 different Lemon Law standards is an unreasonable burden upon interstate commerce.
Ford’s second argument in support of its position that the Lemon Law violates the commerce clause is that the Magnuson-Moss Warranty Act requires car manufacturers to provide a clear printed description of the terms of any express warranties upon the automobile. Ford construes Magnuson-Moss as imposing an obligation upon it and other car manufacturers to set forth in its written warranty the terms and protections of the 40 differing State Lemon Laws. Ford contends that having to prepare its warranty information booklet in such a fashion would be an impossible task, and once again would be an unreasonable impingement upon the interstate auto trade.
US Constitution, article I, § 8 sets forth the powers of Congress. One of the listed powers is that "[t]he Congress shall have the Power * * * [t]o regulate commerce with foreign nations, and among the several States, and with the Indian tribes”. This affirmative grant of power to Congress limits what the States can do concerning interstate commerce. In Brown-Forman Distillers Corp. v New York State Liq. Auth. (476 US —, 90 L Ed 2d 552 [June 3, 1986]), the Supreme Court described the interplay between the commerce clause and State statutes affecting interstate trade as follows: "This Court has adopted what amounts to a two-tiered approach to analyzing state economic regulation under the Commerce Clause. When a state statute directly regulates or discriminates *834 against interstate commerce, or when its effect is to favor instate economic interests over out-of-state interest, we have generally struck down the statute without further inquiry * * * When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State’s interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits” (476 US, at —, 90 L Ed 2d, at 559).
New York’s Lemon Law does not fall within the first category of State statutes described above. It does not directly regulate or discriminate against interstate commerce. It is not a statute intended to favor New York residents or businesses at the expense of the residents and businesses of sister States. In fact, it is a statute enacted in a field of law historically left to the States. "Consumer protection through warranty law is an area that has traditionally been regulated by states through the common law and the Uniform Commercial Code” (Chrysler Corp. v Texas Motor Vehicle Commn., 755 F2d 1192, 1205 [5th Cir 1985]). Assuming, arguendo, that section 198-a interacts with interstate trade in such a manner as to require commerce clause scrutiny, it is under the lesser standard of "whether the state’s interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits”. There are instances in which a State law, when viewed in combination with similar or contradictory laws in other States, can be considered such a burden upon a multistate business, due to the need to comply with multiple regulations, that a commerce clause violation will be found (Tribe, American Constitutional Law § 6-11, at 338, 339 [1978]). New York’s new car Lemon Law does not present such an instance.
The core issue in all commerce clause litigation, no matter now framed, is whether a law enacted by a State impacts upon the health of our national companies and trade in an unreasonable manner. Economic parochialism gave birth to the commerce clause. The role of the judiciary in litigation of this nature is to defend the national, as against the local, interest. No one wishes to see our national industries crippled. They provide our jobs and they fuel the American economic system. On the other hand, the board room cannot run rampant. Often government has had to step in to even the relationship between producer and consumer. Lemon Laws are examples of such State action. It might be better for all, as Ford argues, if the Federal Government established one uniform law setting the standards of performance that auto *835 motive vehicles must meet. It has not done so. Individual automobile purchasers lack the economic wherewithal to remedy the problem. State governments have stepped into the vacuum. Such action is one of the strengths of our Federal form of government. American history is replete with such laws. The recent proliferation of bottle deposit laws is an example. The requirement that national bottlers comply with varied State deposit and labeling requirements no doubt burdens that industry, but it is not an unreasonable burden and does not violate the commerce clause. Neither does New York’s new car Lemon Law.
Ford also contends that the Magnuson-Moss Act requires that the varying terms of the 40 different State Lemon Laws be set forth in its warranty book, a herculean task that places an unreasonable burden upon interstate commerce. Ford’s position is based upon three opinions of the Federal Trade Commission (44 Fed Reg 52036; 43 Fed Reg 50737; 40 Fed Reg 60168), which interpret the Magnuson-Moss Act, and its implementing regulations, as requiring that when a State law mandates that a written warranty contain certain terms, those mandated terms become part of the warranty and must be disclosed under the Commission’s rule. There are a number of reasons for rejecting Ford’s argument.
First, New York’s Lemon Law does not require that Ford make any disclosure in its warranty booklet, and if there is such an obligation upon Ford (and other national car manufacturers) which is unreasonably burdening interstate trade, that obligation arises from Federal activity, not from any statute of New York State. If the burden does not come from the State’s statute, then the statute cannot unreasonably be burdening interstate trade. The commerce clause prohibits States from taking action which restrains interstate trade; it does not prevent the Federal Government from strangling interstate commerce which, if Ford’s argument is accepted, is what is occurring here. There has been no showing that any of the 40 different Lemon Laws require any disclosure of their terms in Ford’s warranty book. Certainly, New York’s does not. The requirement for that disclosure, if it exists, is a Federal one. The States have not burdened interstate commerce, the Congress has. Ford’s remedy is to take its case to Congress for clarification of the disclosure requirements of Magnuson-Moss.
The second flaw in Ford’s argument is that a review of the 12 sections of the Magnuson-Moss Act (15 USC §§ 2301-2312) *836 and the warranty disclosure regulations enacted by the Federal Trade Commission (16 CFR part 701) reveal no legal requirement compelling a car manufacturer to set forth the provisions of the Lemon Laws enacted by the various States. In fact, 16 CFR 701.3 (a) requires a manufacturer to disclose what it will do in the event of a defect under its written warranty and specifically mandates the inclusion of the following language: "This warranty gives you specific legal rights, and you may also have other rights which vary from State to State.” The Magnuson-Moss Act requires a manufacturer to fully disclose the terms of a warranty it is voluntarily giving. 15 USC § 2302 (a) gives the Federal Trade Commission the power to enact rules requiring disclosure from a manufacturer, but only with respect to the written warranty given on the product. The term "written warranty” is defined in section 2301 (6) as:
"(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
"(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,
"which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.”
In other words, a written warranty is a statement of to what extent a manufacturer will voluntarily stand behind its product. It is not a compilation of the laws of all of the States setting forth the rights of consumers to recover for defective products. The Federal Trade Commission is authorized by Congress to compel a manufacturer to make full disclosure with respect to its written warranty. It is not empowered to turn car manufacturers into printers of law books. To the extent the Federal Trade Commission’s opinions cited by Ford purport to do so, they misconstrue the statute, engage in administrative legislation beyond the power delegated, and are rejected by this court. In directing the consumer to look to the laws of his own State for relief in excess of what the *837 manufacturer will do under the warranty voluntarily assumed, the manufacturer has met his obligation under Magnuson-Moss. On the other hand, Ford cannot misrepresent to New York consumers the rights available to them under New York’s Lemon Law, including the right to the free repair of warranty-covered defects during the first 18,000 miles or two years of operation, whichever first occurs.
Ford’s remaining defense concerns the Magnuson-Moss Act (15 USC §§ 2301-2312). Judge Moran gives an excellent description of the reasons for, and legislative history of, the Magnuson-Moss Act in his opinion in Skelton v General Motors Corp. (500 F Supp 1181, 1184, revd on other grounds 660 F2d 311) and notes that it "has been variously described as 'disappointing’, 'opaque’, and a product of 'poor drafting’ ”. The act is an attempt to give limited protection to consumers by regulating express warranty disclosure and limiting a manufacturer’s ability to disclaim implied warranties. Ford’s first contention is that the Magnuson-Moss Act preempts the field of warranty protection for purchasers of new cars. Once again, the court disagrees. In the Skelton opinion (supra, p 1184) Judge Moran states "[A]pparent from the Act and its legislative history is the Congressional reluctance to sanction a sweeping preemption of the law of commercial transactions traditionally the preserve of each of the fifty states but in a sense federalized by the widespread enactment of the Uniform Commercial Code”. In Chrysler Corp. v Texas Motor Vehicle Commn. (supra) the Fifth Circuit Court of Appeals was faced with the issue of whether the dispute resolution procedures set forth in the Magnuson-Moss Act invalidated a dispute resolution procedure contained in the Lemon Law of Texas under the doctrine of preemption. In rejecting the contention, the court stated: "Consumer protection through warranty law is an area that has traditionally been regulated by states through the common law and the Uniform Commercial Code; it was not until 1975 that Congress entered the fray with passage of Magnuson-Moss pursuant to its power under the Commerce Clause, U.S. CONST. Art I § 8. These circumstances significantly affect our analysis of Chrysler’s preemption claims, for when federal law operates in an area historically regulated by states, courts have required a 'clear statement’ by Congress of an intent to preempt. Jones v. Rath Packing Co., 430 U.S. 519, 525 * * * Cognizant of this presumption favoring the validity of state law, we have eschewed interpretations of Magnuson-Moss 'that would significantly *838 affect the federal-state balance.’ See Boelens v. Redman Homes, Inc., 748 F.2d 1058, 1067-68 (5th Cir. 1984)” (Chrysler Corp. v Texas Motor Vehicle Commn., 755 F2d 1192, 1205 [5th Cir 1985], supra).
Ford’s reliance upon the language of 15 USC § 2311 (c) is misplaced. A close reading of paragraph (1) of subdivision (b) in conjunction with subdivision (c) is required in order to understand 15 USC § 2311. The pertinent statutory language is as follows:
"(b) Rights, remedies and liabilities. (1) Nothing in this title [15 USC § 2301 et seq.J shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal Law * * *
"(c) State warranty laws. (1) Except as provided in subsection (b) and in paragraph (2) of this subsection, a State requirement — (A) which relates to labeling or disclosure with respect to written warranties or performance thereunder * * * shall not be applicable to written warranties complying with such sections (or rules thereunder).
"(2) If, upon application of an appropriate State agency, the Commission determines (pursuant to rules issued in accordance with section 109 [15 USC § 2309]) that any requirement of such State covering any transaction to which this title [15 USC § 2301 et seq.J applies (A) affords protection to consumers greater than the requirements of this title (15 USC § 2301 et seq.J and (B) does not unduly burden interstate commerce, then such State requirement shall be applicable (notwithstanding the provisions of paragraph (1) of this subsection) to the extent specified in such determination for so long as the State administers and enforces effectively any such greater requirement.” (Emphasis supplied.)
A quick reading of subdivision (c) could give rise to the false impression that a State may not enact a requirement concerning performance under a written warranty unless approved in advance by the Federal Trade Commission. Such a reading overlooks the fact that subdivision (c) specifically exempts State statutes falling within subdivision (b) from the requirement of prior commission approval in order to be valid. Reading the two subdivisions together discloses that the Magnuson-Moss Act does not preempt, or prevent the enactment of, any State law providing a remedy to a consumer, but does prohibit any other form of State law that would regulate the contents, or performance under, a written warranty complying *839 with the requirements of the Magnuson-Moss Act, unless the Federal Trade Commission has given prior approval. For instance, Magnuson-Moss would not prevent an enactment such as New York State’s Lemon Law, even though it affects performance under a written warranty, because the law gives State consumers an additional remedy. However, subdivision (c) of section 2311 would prevent New York from enacting a law requiring car manufacturers to print their warranties in Spanish since such a requirement would not provide a consumer remedy, and would attempt to impose excessive disclosure burdens upon manufacturers already in compliance with governing Federal law.
The task remaining for the court is to fashion the appropriate remedy. Ford has not intentionally engaged in consumer fraud. It has a difference of opinion with the Attorney-General over the meaning of a statutory provision. The dispute has been resolved by this court, which is its function. Consequently, an award to the petitioner of the $2,000 in statutory costs that CPLR 8303 (a) (6) gives the court the discretion to award, is not appropriate. Likewise, retroactive reimbursement to the consumers that have paid the $100 charge will not be ordered. Requiring Ford to locate and repay such consumers would be at a cost ultimately to be borne by future new car purchasers. Prospective enforcement of the provisions of the Lemon Law interpreted in this decision will best serve the interests of all New York consumers.
The petition will be granted, without costs, to the extent of permanently enjoining the Ford Motor Company from requiring its customers to pay the first $100 for warranty repair work for each covered visit pursuant to its extended powertrain limited warranty which warranty repairs occur prior to the first 18,000 miles of operation, or two years following the date of original delivery of the motor vehicle to the consumer, whichever occurs first. The court will convert a portion of the proceeding to a declaratory judgment action, the appropriate procedural device for resolution of the statutory interpretation, commerce clause, and preemption issues, and grant summary judgment to the State of New York, without costs, declaring that: (1) General Business Law § 198-a (Lemon Law) requires that during the first 18,000 miles or two years of operation, whichever occurs first, an automobile manufacturer must repair all defects covered by its express *840 warranty, free of charge; (2) General Business Law § 198-a (Lemon Law) does not violate US Constitution, article I, § 8 (commerce clause); and (3) the Magnuson-Moss Act (15 USC §§ 2301-2312) does not preempt New York’s new car Lemon Law.